2193

James BENSON and Evelyn Benson, Appellants v. UNITED GUARANTY
RESIDENTIAL INSURANCE OF IOWA, Respondent.

(445 S.E. (2d) 647)

Court of Appeals

*F. Truett Nettles, II,* of *Hillings & Nettles,* Charleston, *for appellants.*

*John C. Bruton, Jr.* and *Henry J. White,* both of *Sinkler & Boyd,* Columbia, *for respondent.*

Submitted May 10, 1994.

Decided June 13, 1994; Reh. Den. July 21, 1994.

*Per Curiam:*

This is an action to quiet title. The appellants, James and Evelyn Benson, brought this action seeking to have a judgment lien held by the respondent, United Guaranty Residential Insurance of Iowa[1] (United), declared void and to have it removed from property owned by them. In response to the complaint, United filed a motion to dismiss pursuant to Rule 12(b)(6), SCRCP, claiming the Bensons failed to state facts sufficient to constitute a cause of action. The case was referred to the master-in-equity pursuant to S.C. Code Ann. § 15-67-60 (1976), which permits the referral of actions to quiet title to a master.[2] After a hearing and the submission of

---

[1] Now known as United Guaranty Residential Insurance Company.

[2] At the hearing, the parties stipulated pursuant to S.C. Code Ann. § 14-11-85(3) (Supp. 1993) that any appeal would be directly to the Supreme Court.

supplemental memorandum, the master issued an order dismissing the complaint. The Bensons appeal. We affirm.

The trial court must dispose of a Rule 12(b)(6) motion to dismiss for failure to state a cause of action based solely upon the allegations set forth on the face of the complaint. *Brown v. Leverette*, 291 S.C. 364, 353 S.E. (2d) 697 (1987). The motion cannot be sustained if facts alleged in the complaint and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case. *Id.*

The master stated in his order he was deciding the Rule 12(b)(6) motion based upon the complaint, United's motion, additional memoranda submitted by the parties, argument of counsel, and "being otherwise fully informed about this matter. . . ." It is clear from the master's order that he considered matter outside the pleadings before him, so that the motion to dismiss was converted into a summary judgment motion pursuant to Rulue 56, SCRCP. The Bensons do not argue on appeal that the master inappropriately converted United's motion, or that they did not receive sufficient notice as required by Rule 12(b) and Rule 56, SCRCP. Hence, they have waived any objection to the master's decision on the merits. Furthermore, none of the matters outside the pleadings which the master considered is in the record on appeal, and the Bensons do not take exception to the facts as found by the master. In view of the record and arguments on appeal, we treat the facts as found by the master as binding upon the parties.

On February 17, 1988, the Bensons purchased lot 102 in the Ashley Harbor Subdivision in Charleston County from Albert V. Estee and Linda G. Estee for $525,000. After the deduction of all applicable closing costs, the net proceeds to the Estees was $507,701. These proceeds were used to pay off the aggregate amount of the mortgage liens on the lot at the time of the sale, which mortgages totaled $514,217.47.[3]

---

[3] The mortgage liens paid off included:

| Mortgage Holders | Mortgage Lien |
| --- | --- |
| (1) Omni Savings Bank | $293,603.27 |
| (2) Citizens Savings Bank | $127,603.27 |
| (3) Dorothy Baker | *$100,000.00 |

*Baker accepted payment in the amount of $93,483.64, which was less than the full amount of her mortgage.

On January 26, 1988, three weeks prior to the above conveyance, United obtained a judgment against Albert V. Estee in the amount of $61,332.15. On that date, Albert V. Estee owned a one-half undivided interest in the lot. Thus, United's judgment lien attached to the undivided one-half interest of Albert V. Estee as of January 26, 1988, when the judgment lien was duly recorded.[4]

When the Bensons attempted to resell the lot, they learned of the judgment lien of United. The Bensons requested a release of United's judgment lien, and when United refused to release the lien, this action to quiet title followed.

The theory of recovery stated in the Benson's complaint was that the lien did not attach to the lot because the judgment debtor, Albert V. Estee, had no equity in the property at the time the lien arose. In replying to United's Motion to Dismiss, the Bensons asserted that they were alternatively entitled to relief under the doctrine of equitable subrogation. The Bensons accordingly asked the master to declare United's adverse claim ineffective and void, and to enter a judgment releasing the property from the judgment lien.

The master found United's judgment was recorded prior to the Bensons' purchase of the property. The master also found the sales price represented the fair market value of the property at the time. The net proceeds to the Estees was $507,701, but the mortgage debt on the property was $514,217.47. The master concluded Albert V. Estee had no equity in the property at the time United recorded its judgment or at anytime thereafter. In a footnote, the master stated he made no finding whether the Bensons had any equity in the property as of the date of the hearing.

The master noted United's judgment lien arose by virtue of S.C. Code Ann. § 15-35-810 (1976), which provides in part:

> Final judgments and decrees entered in any court of record in this State . . . shall constitute a lien upon the real estate of the judgment debtor situate in any county in this State in which the judgment or transcript thereof

[4]The complaint did not allege the date the judgment was filed. However, the master found the judgment was recorded January 26, 1988, or 22 days prior to the date the Bensons acquired the property. The Bensons do not contend that at the time they purchased the property in 1988, United's judgment was not properly recorded in the public records.

is entered upon the book of abstracts of judgments and duly indexed, the lien to begin from the time of such entry on the book of abstracts and indices and to continue for a period of ten years from the date of such final judgment or decree.

The master stated the duration of liens is fixed by statute and may not be prolonged or shortened by the courts. In addition, the master noted § 15-35-810 does not contain any requirement that the judgment debtor have equity in the subject property for the lien to attach.

As relates to the equitable subrogation theory, the master noted any discussion of equitable subrogation was premature, since United had not attempted to enforce its lien. The master also stated that even assuming the doctrine applied, the Bensons failed to state a cause of action, since the issue is whether the prior mortgage holders had a right to extinguish the subsequent judgment lien, and no such right exists in South Carolina.[5] The master found that under the doctrine, the judgment lien would not be extinguished, but would merely be subordinate to the Bensons' position, which is "far different from the relief requested in the Complaint. . . ."

Finally, the master held that § 15-35-810 gives United until January 1988 to enforce its judgment against the lot. The master noted the real issue was who would benefit from increases in the value of the property over the remaining life of the judgment lien. The master concluded the Bensons purchased Lot 102 subject to United's lien and their interests were subject to the judgment lien. Concluding that neither of the Benson's theories was sufficient ground to set aside and release the judgment line, the master granted United's motion and dismissed the complaint.

The issue before this Court is whether the Bensons' complaint states a cause of action pursuant to S.C. Code Ann. § 15-67-10 (1976). We hold that it does not.

S.C. Code Ann. § 15-67-10 (1976) provides:

---

[5] We express no opinion about the accuracy of this ruling since it is unnecessary to our disposition of the case. Additionally, we fail to see how the doctrine is applicable here. Clearly, the proceeds used to pay off the prior mortgages belonged to the Estees, not the Bensons. This is not the case of the Bensons paying off the debt of the Estees for which the Bensons were secondarily liable.

Any person in possession of real property, by himself or his tenant, or any person having or claiming title to vacant or unoccupied real property may bring an action against any person who claims or who may or could claim an estate or interest therein or a lien thereon adverse to him for the purpose of determining such adverse claim and the rights of the parties, respectively.

The purpose and effect of statutes of this type are to enlarge the power of the court to determine adverse claims to land so as to authorize the quieting of title in cases where an action would not lie under the strict rules of equity practice. *Tolbert v. Greenwood Cotton Mill,* 213 S.C. 43, 48 S.E. (2d) 599 (1948). They are designed to afford an easy and expeditious mode of quieting title to real estate. *Id.* The statutory remedy is broader and more comprehensive than that formerly afforded by a court of equity. *Id.* Such a statute, being of a remedial nature, should be liberally construed and be held to embrace all cases coming fairly within its scope. *Id.* It is not essential to the cause of action that there has been a trespass on the property or any showing of damage. *Id.* Where, from the allegation in the complaint, the adverse claim sought to be determined cannot be classified as imaginary or speculative, the complaint states a cause of action under the statute. *Id.*

With these principles in mind, we turn to the Bensons' complaint. They assert they are entitled to a declaration that United's lien is void because Mr. Estee only had a one half interest in the property, and he had no equity at the time United recorded the judgment. This argument, however, does not attack the validity of the adverse claim, only its enforceability. United was entitled to sit back and wait until January 1998 to attempt to enforce its lien against the property. It is undisputed that in January 1988 the Estees had no equity in the property. However, over th the next ten years, presumably, they would have made payments to reduce those debts and the property value would have increased, so that Mr. Estee may have obtained some equity in the property had it not been conveyed to the Bensons. United had the right to take the gamble that the Estees would not default on the mortgages leading to foreclosure by one of the mortgagees, or that the property would not decrease in value, or

both. Hence, the judgment lien did not become "void" by virtue of the Estees' lack of equity in 1988; it merely became unenforceable at that time.

In conclusion, we hold that the relief the Bensons seek does not state a cause of action under § 15-67-10 and even if it does, United is entitled to relief under Rule 56, SCRCP because there are no genuine issues of material fact for trial on the merits of the Bensons' suit. As a matter of law, United has until January 1998 to attempt to enforce its judgment against the property and until that time the judgment remains a valid lien against the property.

Accordingly, the judgment is

Affirmed.