586 S.E.2d 861

Patsy Ann GILBERT, Appellant,

v.

Marvin MILLER and Toya Abbatiello, Defendants,

Of whom Toya Abbatiello is Respondent.

No. 3672.

Court of Appeals of South Carolina.

Submitted April 7, 2003.

Decided Aug. 18, 2003.

Rehearing Denied Oct. 16, 2003.

James H. Price, III, and H.W. Pat Paschal, Jr., both of Greenville, for Appellant.

Matthew K. Johnson, of Greenville, for Respondent.

CONNOR, J.

Patsy Ann Gilbert filed suit against Marvin Miller and Miller's landlord, Toya Abbatiello, to recover for personal injuries sustained by Gilbert after being bitten by Miller's dog. Abbatiello filed a motion to dismiss pursuant to Rule 12(b)(6), SCRCP. The trial court granted Abbatiello's motion. We affirm.

## FACTS

Miller resides with his dog at an apartment complex owned by Abbatiello. Miller's dog attacked Gilbert while she was visiting at another tenant's apartment.[1]

---

1. The record is unclear concerning whether Gilbert is also a tenant at the apartment complex. Patsy Chambers, whose mother lives in the

Gilbert filed suit against Miller and Abbatiello. Gilbert alleged in her complaint that Abbatiello was negligent in "allowing Miller to keep a vicious dog on her premises despite ... a policy of no dogs kept by tenants except for small dogs." The complaint did not refer to any lease agreement and did not allege any duty on the part of Abbatiello.

Abbatiello moved to dismiss the complaint against her based on Gilbert's failure to state facts sufficient to constitute a cause of action upon which relief can be granted. Rule 12(b)(6), SCRCP. The trial court granted Abbatiello's motion. This appeal follows.

## STANDARD OF REVIEW

Gilbert correctly asserts the trial court converted Abbatiello's Rule 12(b)(6) motion into a motion for summary judgment by reviewing matters outside of the pleadings. The trial court's order referred to Abbatiello's motion as a motion to dismiss pursuant Rule 12(b)(6), SCRCP. A Rule 12(b)(6) motion is converted to a Rule 56, SCRCP, motion for summary judgment if "matters outside the pleading are presented to and not excluded by the Court...." Rule 12(b), SCRCP.

Gilbert submitted affidavits, photographs, and a copy of the lease agreement in her response to Abbatiello's motion. Abbatiello did not object to their inclusion and the trial court specifically mentioned the lease agreement and Patsy Chambers' affidavit in its order. Therefore, Abbatiello's Rule 12(b)(6) motion was converted to a motion for summary judgment. *See Benson v. United Guar. Residential Ins. of Iowa,* 315 S.C. 504, 445 S.E.2d 647 (Ct.App.1994) (finding where the

---

complex, stated in her affidavit that Gilbert "came to my mother's house to pick up" her child. Gilbert's affidavit merely states she was attacked "while at the home of Patsy Chambers' mother." Furthermore, Gilbert's brief states the issue on appeal is whether a landlord can be liable for an injury to a "guest" inflicted by a tenant's dog. However, Gilbert's complaint states she was "talking with a neighbor" when she was attacked by Miller's dog. Abbatiello admitted the facts as stated in Gilbert's complaint for the purposes of her motion to dismiss. Given our standard of review and Abbatiello's admission, we resolve this ambiguity against Abbatiello and will assume the attack occurred while Gilbert, a tenant, was a guest at another tenant's apartment.

trial court considers matters outside the pleadings the motion to dismiss is converted to one for summary judgment).

When reviewing a dismissal of an action under Rule 56, SCRCP, an appellate court applies the same standard of review implemented by the trial court. *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002). A trial court's decision to grant a motion for summary judgment is appropriate only when there is no genuine issue of material fact so that the moving party is entitled to judgment as a matter of law. *Id.* All ambiguities, conclusions, and inferences arising from the evidence must be construed against the movant. *Id.*

## LAW/ANALYSIS

### A.

Gilbert argues the trial court erred by dismissing her complaint on the basis that a landlord is not liable for injuries caused by a tenant's dog kept on leased premises.

In *Mitchell v. Bazzle*, 304 S.C. 402, 404 S.E.2d 910 (Ct.App. 1991), we first addressed a landlord's liability for injuries inflicted by a tenant's dog. The "clear question" presented in *Mitchell* was whether South Carolina law "imposed a duty on [landlord] to [plaintiff] to terminate [tenant]'s month-to-month lease in order to remove [tenant]'s dog from the land." *Id.* at 404, 404 S.E.2d at 911. We held a landlord could not be vicariously liable under the common law for the actions of a tenant's dog even where the landlord knew of the animal's vicious propensities and could have foreseen the injury, had adequate time to terminate a month-to-month tenancy, and failed to terminate the lease. *Id.* at 404–05, 404 S.E.2d at 911–12.[2]

---

2. *But see Cronin v. Chrosniak,* 145 A.D.2d 905, 536 N.Y.S.2d 287 (1988) (finding summary judgment improperly granted to landlord where landlord knew of dog's vicious propensities and had capability to remove dog by terminating month-to-month lease); *Vasques v. Lopez,* 509 So.2d 1241 (Fla.Dist.Ct.App.1987) (reversing a grant of directed verdict for defendant landlord where the jury could have inferred actual knowledge of the dog's vicious propensities and the landlord's control over the premises based on the landlord's right to terminate a week-to-week tenancy and evict the tenant).

In *Fair v. United States,* 334 S.C. 321, 513 S.E.2d 616 (1999), our Supreme Court analyzed the question of whether the South Carolina Residential Landlord and Tenant Act (RLTA) [3] altered the common law rule espoused in *Mitchell.* The Court held that under the RLTA a landlord is liable only for defects relating to the inherent physical state of the leased premises. *Fair,* 334 S.C. at 323–24, 513 S.E.2d at 617. Therefore, the RLTA "does not alter the common law rule that a landlord is not liable to a tenant's invitee for injury caused by a tenant's dog." *Id.; see Bruce v. Durney,* 341 S.C. 563, 534 S.E.2d 720 (Ct.App.2000) (recognizing and reaffirming the principle of law stated in *Fair* and *Mitchell* ).

■ Since there is no dispute over any material facts, the trial court did not err in granting summary judgment. Abbatiello was entitled to judgment as a matter of law because South Carolina law does not recognize holding a landlord vicariously liable for the actions of a tenant's dog.

### B.

However, this does not end the inquiry. Gilbert also contends the trial court erred in granting summary judgment for Abbatiello because the lease agreement between Abbatiello and Miller created a duty of care for the landlord to prevent harm by a tenant's dog. *See Miller v. City of Camden,* 317 S.C. 28, 451 S.E.2d 401 (Ct.App.1994), *aff'd as modified,* 329 S.C. 310, 494 S.E.2d 813 (1997) (stating an affirmative legal duty to act can exist if created by contract). The lease provided:

Pets must meet the approval of the landlord and appropriate additional deposits may be required. Dogs will not be allowed in multifamily units. Continuous disturbances or complaints, such as odors, fleas or messes caused by the pet, will result in the deposit being forfeited along with additional monies to correct the problems and the animal must leave the premises. If it is necessary to hire a pest eradicator because of a flea problem the tenant will pay the cost. The tenant will also be responsible for any damage caused by the pet and must be in full control of the pet at all times.

---

3. S.C.Code Ann. §§ 27–40–10 to –940 (1991 & Supp.2002).

Initially, Gilbert did not allege, and there is no evidence in the record, she entered into a lease agreement like the one between Abbatiello and Miller. Thus, in the absence of any allegation that Gilbert entered into an identical lease, it is impossible to say, as Gilbert claims in her brief, the "lease could be relied upon by other tenants in entering their lease as assurance that their premises (and guests) would be free of the presence of" a vicious dog. *See Bob Hammond Const. Co. v. Banks Const. Co.,* 312 S.C. 422, 440 S.E.2d 890 (Ct.App. 1994) (stating a third person not in privity of contract with the contracting parties generally may not enforce the provisions of a contract unless it is entered into for the benefit of the third person).

This Court dealt with the creation of a duty by a lease in *Goode v. St. Stephens United Methodist Church,* 329 S.C. 433, 494 S.E.2d 827 (Ct.App.1997). Goode was attacked while visiting a friend at an apartment complex. One of his attackers resided at the apartment complex.

Goode sued the landlord (St. Stephens) asserting St. Stephens was negligent in failing to provide security. Goode alleged he was a third party beneficiary under the lease agreement in which tenants agreed not to engage in unlawful conduct on the grounds of the apartment complex. Thus, Goode argued the lease created a duty for St. Stephens to protect him from attack by third parties. *Id.* at 445, 494 S.E.2d at 833.

Upon examination of the lease provision, we concluded St. Stephens did not owe a duty of care to Goode because he was not a third party beneficiary under the contract. We concluded that if St. Stephens did not "covenant to prevent or to protect *tenants* from the violent acts of other tenants or third parties" it surely "could not have intended to create such a benefit directly in favor of Goode." *Id.* at 446, 494 S.E.2d at 833.

The main guide in contract interpretation is to ascertain and give legal effect to the intentions of the parties as expressed in the language of the lease. *United Dominion Realty Trust, Inc. v. Wal–Mart Stores, Inc.,* 307 S.C. 102, 413 S.E.2d 866 (Ct.App.1992). If a contract's language is clear and capable of legal construction, this Court's function is to

interpret its lawful meaning and the intent of the parties as found in the agreement. *Smith–Cooper v. Cooper,* 344 S.C. 289, 543 S.E.2d 271 (Ct.App.2001). A clear and explicit contract must be construed according to the terms the parties have used, with the terms to be taken and understood in their plain, ordinary, and popular sense. *Sphere Drake Ins. Co. v. Litchfield,* 313 S.C. 471, 438 S.E.2d 275 (Ct.App.1993).

It is clear the language of the lease did not intend to make Gilbert, as either a tenant or a guest, a third party beneficiary by imposing a duty in tort on the landlord to prevent a tenant's dog from injuring another. The lease provision cannot be construed as being for the protection of other tenants or guests. A review of the lease provision shows its primary purpose was to prevent damage to the property or disruption of the physical habitability of the apartment complex by a tenant's pet. This is evident from the provision's use of the general term "pets" rather than "dogs." [4] This provision could refer to any pet, not only dogs, and demonstrates Abbatiello did not contract to protect others from dogs on the premises.

The lease provision's concern rested in ensuring any tenant who kept a pet would be responsible for any mess or sanitary problems caused by the animal. Importantly, the lease explicitly made the control of the pet the sole responsibility of the tenant, not the landlord. *See Braun v. York Props., Inc.,* 230 Mich.App. 138, 583 N.W.2d 503 (1998) (finding landlord had no duty to protect others from attack by a tenant's dog even where landlord had promulgated rules and regulations governing tenants' possession of dogs; the primary purpose of the rules was to protect against harm to the premises); *cf. Alas-*

---

4. Dogs are referred to only in relation to their prohibition in multifamily units. We construe this prohibition to be only for the benefit of the landlord and the prevention of a nuisance, such as a dog barking or pet odors, to the adjoining lessee in a multifamily unit because the next sentence of the lease provision addresses "continuous disturbances or complaints, such as odors, fleas or messes caused by the pet...." *See O'Cain v. O'Cain,* 322 S.C. 551, 473 S.E.2d 460 (Ct.App.1996) (stating a private nuisance is an unreasonable interference with the plaintiff's use and enjoyment of the land). Further support for this is found in another paragraph of the lease mandating that "multifamily units must maintain lower noise levels after 11:00 PM so as not to disturb other tenants."

*kan Village, Inc. v. Smalley,* 720 P.2d 945 (Alaska 1986) (finding landlord had undertaken a specific duty to protect others from tenant's vicious dog and could be found liable where lease specifically prohibited tenants from keeping "vicious dogs").

The landlord here has not contracted to remove pets unless there have been continuous disturbances or complaints. Abbatiello had not received any complaints about Miller's dog other than her own observation "a couple of days" before the attack of the dog "raging and rearing up." The lease provision prohibiting pets in multifamily units was not equivalent to a promise creating a duty on the part of Abbatiello to keep the premises free from pets or vicious dogs. Moreover, there is no evidence Abbatiello permitted Miller to keep the dog in the multifamily unit, or knew of any intention by Miller to keep a pet at his unit, at the time the lease was entered into.[5]

Our opinion in *Mitchell* is also instructive in determining whether the lease created a duty of care for Abbatiello to prevent harm by a tenant's dog. *Mitchell,* 304 S.C. at 404–05, 404 S.E.2d at 911–12. In holding that the law did not impose a duty on the landlord based on the circumstances present in *Mitchell,* we clearly implied that a landlord is not liable even where a landlord has some form of control, *i.e.,* termination of the lease, over a tenant's dog. *But see FOC Lawshe Ltd. P'ship v. Int'l Paper Co.,* 352 S.C. 408, 414, 574 S.E.2d 228, 231 (Ct.App.2002) ("In *Mitchell,* this court found that even though the landlord knew of the dog's viciousness, had adequate time to terminate the tenant's lease, and failed to terminate the tenant's lease, the landlord was not liable for

5. In this case, the only evidence of Abbatiello's knowledge of the dog indicates she learned of the dog "a couple of days" before the attack. This limited time period would have been insufficient for Abbatiello to have evicted Miller and abated any hazard, given the record does not specify the term of the lease. A landlord's power to evict a tenant is restrained by the statutory termination notice period. *See* S.C.Code Ann. § 27–40–770 (1991) (providing for the termination of periodic tenancies by the landlord after giving written notice to the tenant); *see also Feister v. Bosack,* 198 Mich.App. 19, 497 N.W.2d 522, 525–26 (1993) ("If a third party is injured before the landlord lawfully could have evicted the tenant, the landlord cannot be liable, even if he knew about the dog's vicious nature.").

the acts of the tenant's dog *over which the landlord had no control.*") (emphasis added).

The trial court did not err in finding the lease did not alter the common law rule that a landlord is not liable to a third party for injuries caused by a tenant's dog.

## CONCLUSION

Based on the foregoing analysis, the order of the trial court granting summary judgment is

**AFFIRMED.**

ANDERSON and HUFF, JJ., concur.