702 S.E.2d 378

Robert L. CULLEN, Andrew A. Corriveau, John Caldwell, Andrea Hucks, Jamie Bellamy, Michael Pearson, and David Mandrell, Plaintiffs,

v.

J. Bennett McNEAL, B. McNeal Partnership, L.P., Anthony R. Porter, and Wright's Point Home Owners Association, Inc., Respondents–Appellants,

of whom Robert L. Cullen, Andrew A. Corriveau and Andrea Hucks are Appellants–Respondents.

No. 4750.

Court of Appeals of South Carolina.

Heard Feb. 10, 2010.

Decided Oct. 6, 2010.

Rehearing Denied Dec. 6, 2010.

John E. North and Pamela K. Black, both of Beaufort, for Appellants–Respondents.

Joel D. Bailey, of Beaufort, for Respondents–Appellants.

LOCKEMY, J.

In this cross-appeal, the Appellants–Respondents (the Homeowners) argue the circuit court erred in (1) considering extrinsic evidence in interpreting the Declarations for Wright's Point; (2) construing the term "Developer"; (3) finding undeveloped land was a part of Wright's Point; (4) finding B. McNeal Partnership, L.P. was a "successor developer"; (5) finding the Developers were entitled to continue to control the Association; (6) finding the Developers were entitled to continue to control the Committee; and (7) failing to find the Homeowners were entitled to pursue the claims of the Association derivatively and seek attorney's fees. The Respondents–Appellants (the Developers) argue the circuit court erred in finding they were not entitled to attorney's fees. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Robert L. Cullen, Andrew A. Corriveau, and Andrea Hucks (the Homeowners) are property owners in Phase I of Wright's Point Plantation, a planned waterfront community in Beaufort County.[1] J. Bennett McNeal, B. McNeal Partnership, L.P., and Anthony R. Porter (the Developers) are real estate developers involved with the development of Wright's Point.

---

1. The Homeowners are part of an original group of seven property owners in Wright's Point who initiated this litigation against the Developers. Cullen, Corriveau, and Hucks are the only Homeowners who have appealed the circuit court's order.

In 1997, Anthony Porter acquired a 1.7 acre tract, a 19.74 acre tract (Parcel B), and a 10.45 acre tract (Parcel C) of land in Beaufort County from Mary P. Logan, Lewis H. Wright, and John D. Wright. Anthony Porter's father, Jimmy Porter, acquired an 8.41 acre tract (Parcel D) from Lewis Wright and John Wright. Pursuant to a recorded plat entitled "Wright's Point Phase I," portions of the 1.7 acre tract and Parcels B, C, and D were subdivided into 44 lots, roads, and community spaces. A majority of the land within Parcels B and D was labeled "Future Development" and not subdivided into lots.

In June 1998, the Declarations of Covenants, Conditions, Restrictions, and Easements (the Declarations) for Wright's Point, which subjected all four parcels owned by Anthony Porter and Jimmy Porter to the Declarations, were recorded. Pursuant to the Declarations, the Wright's Point Homeowner's Association (the Association) was incorporated to administer Wright's Point and enforce the Declarations. Porter and his father conveyed the open spaces, ponds, streets, and certain other areas in Wright's Point to the Association. Also, pursuant to the Declarations, all construction and improvements made within Wright's Point were subject to review and approval by the Wright's Point Architectural Committee (the Committee), which consisted of Anthony Porter, Jimmy Porter, and subsequently included their appointees, including McNeal. In April 1999, Anthony Porter conveyed undeveloped Parcel B and four lots in Phase I of Wright's Point to McNeal, d/b/a McNeal Land Company. In July 2002, Jimmy Porter conveyed undeveloped Parcel D to B. McNeal Partnership, L.P.

In May 2003, Homeowner Cullen convened a meeting of a group of property owners in Phase I and formed a separate entity called the Wright's Point Property Owners Association. According to the minutes of the meeting, those present wanted "a total revamping of the [Committee]" so as to permit the use of hardi-plank siding. They also expressed their concern over the use of amenities in Phase I by new property owners in subsequent phases. The newly-formed association elected Cullen as president and McNeal was elected as a board member, although he was not present at the meeting. In an October 2003 letter to property owners in Wright's Point, Cullen explained that McNeal informed him Phase I was only

part of the total Wright's Point development, and plans to develop the remaining properties were moving forward. Cullen also explained that McNeal informed him Wright's Point was a "walking community" and owners in new phases should have access to the Wright's Point common areas and docks. In November 2003, Cullen presented McNeal with a document which purported to "represent a consensus of the existing homeowners and residents." The document asserted that Phase I should be a "separate and independent area" from the remaining phases of Wright's Point, and residents in any additional phases should not have access to the common areas and docks.

In December 2003, Anthony Porter sent a letter to Cullen objecting to the existence of the Wright's Point Property Owner's Association and asserting that he was the Developer of Wright's Point, and thus, he was entitled to appoint and remove the Association's board members and officers. In January 2004, the Homeowners, together with other property owners, held an annual meeting of the Wright's Point Property Owners Association. Anthony Porter attended the meeting with his attorney and presented the Homeowners with a memorandum which stated: (1) he was the Developer of Wright's Point and still owned lots there, so he retained "the sole authority under the [Declarations] to appoint and remove the directors of the [Association]"; (2) the meeting being held was "not an official meeting" and several property owners, including himself, had not been given notice of the meeting; and (3) any meetings convened by the Homeowners had been done without his knowledge and were "not legal." In March 2004, at a supplemental annual meeting of the Wright's Point Property Owner's Association, the property owners in attendance ratified the filing of this declaratory judgment action.

The Homeowners filed suit against the Developers in March 2004. In their first cause of action for a declaratory judgment, the Homeowners asked the circuit court to find: (1) Anthony Porter's right to control the appointment of directors and officers of the Association had terminated, and this right belonged to the owners of the lots within Wright's Point; (2) the Homeowners were validly-elected directors of the Association; (3) McNeal did not have the right to act as the Developer or the Developer's representative in connection with the

business and affairs of the Association; (4) McNeal and B. McNeal Partnership, L.P. did not have the right to annex real estate owned by either of them to Wright's Point, or to permit owners of any part of that real estate access to or use of the common areas and amenities owned by the Association and located within Wright's Point; (5) only those owners of lots depicted on the plat of the development and recorded in Plat Book 64 at page 150 (Phase I) had the right to access or use the common areas of Wright's Point owned by the Association; and (6) Anthony Porter and McNeal did not have the right to include additional real estate within the scope of the Declarations.

In their third cause of action, the Homeowners sought both a temporary and permanent injunction "restraining and enjoining [the Developers] from asserting or attempting to assert control over the business or affairs of the Association," and "restraining and enjoining [the Developers] ... from granting to any owner of real estate outside of Wright's Point Subdivision any purported right to access or use of the common areas of the Association." [2]

In their Answer and Counterclaim, the Developers asserted counterclaims for damages under multiple causes of action, including: civil conspiracy, breach of contract, breach of implied covenant of good faith and fair dealing, conversion, tortious interference with contractual relationships, and defamation. The Developers also sought declaratory and injunctive relief prohibiting the Homeowners from: (1) taking any action reserved to the Developer under the Declarations; (2) taking any action in the name of the Wright's Point Architectural Committee; and (3) taking any action in the name of the Association, or any other entity purporting to be legally entitled to act on behalf of the members of such association. The Developers also asked the circuit court to require the Homeowners to "account for and return all monies collected from Wright's Point property owners."

On February 27, 2007, McNeal, the owner of all the land other than the 44 lots depicted on the official plat, conveyed a portion of the property he acquired from Anthony Porter and

---

**2.** The Homeowners withdrew their second cause of action for an accounting prior to trial.

a portion of the land he acquired from Jimmy Porter to Richard Ratcliff Homes, Inc. On February 28, 2007, Anthony Porter executed a document entitled "Supplemental Declaration to Declaration of Covenants, Conditions, and Restrictions for Wright's Point Covenants" (Supplemental Declaration), wherein he acknowledged that Jimmy Porter was a Developer although his name was not set forth in § 1.12 of the Declarations. In June 2007, Anthony Porter and Jimmy Porter assigned their rights as Developer of Wright's Point to B. McNeal Partnership, L.P.

After a March 2007 non-jury trial, the circuit court issued an order in October 2007 denying all of the declaratory and injunctive relief sought by the Homeowners. The circuit court found Anthony Porter had not relinquished his right as Developer to appoint and remove officers and directors of the Association or members of the Committee. The circuit court also determined Wright's Point was not confined to the properties in Phase I, and the remaining land within the development could be developed as part of subsequent phases. Furthermore, the circuit court determined the amenities and common areas within Phase I were not restricted for use solely by owners in Phase I, but were for the use and enjoyment of all current and future property owners within Wright's Point. The circuit court also found Jimmy Porter was an official developer of Wright's Point and B. McNeal Partnership, L.P. was an assignee and successor developer of Wright's Point.

The circuit court denied the Developers' counterclaims for damages and granted the Developers' request for injunctive relief with respect to the ability of the Developer to control the Association, and the right of all property owners to use and access the amenities and common areas of Wright's Point. The circuit court also granted the Developers' request for specific performance, requiring the Homeowners to perform their contractual obligations under the Declarations, particularly with respect to recognizing and adhering to the rights of the Developer to control the Association and complete the development. The circuit court denied both the Homeowners' and Developers' requests for attorney's fees. This appeal followed.

## STANDARD OF REVIEW

The Homeowners asserted causes of action for declaratory judgment and injunctive relief. "Actions for injunctive relief are equitable in nature." *Wiedemann v. Town of Hilton Head Island,* 344 S.C. 233, 236, 542 S.E.2d 752, 753 (Ct.App.2001). "In equitable actions, the appellate court may review the record and make findings of fact in accordance with its own view of a preponderance of the evidence." *Id.* A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue. *Burton v. York County Sheriff's Dept.,* 358 S.C. 339, 345–46, 594 S.E.2d 888, 891–92 (Ct.App.2004). "To determine whether an action is legal or equitable, this [c]ourt must look to the action's main purpose as reflected by the nature of the pleadings, evidence, and character of the relief sought." *Fesmire v. Digh,* 385 S.C. 296, 303, 683 S.E.2d 803, 807 (Ct.App.2009). Here, the Homeowners' primary purpose in bringing this action was to enjoin the Developers from controlling the Association and allowing Wright's Point property owners outside of Phase I to access the common areas of the subdivision. Therefore, we find this suit is an action in equity and this court may review the circuit court's factual findings in accordance with its own view of the preponderance of the evidence. *See Cedar Cove Homeowners Ass'n, Inc. v. Di Pietro,* 368 S.C. 254, 264, 628 S.E.2d 284, 288 (Ct.App.2006) (holding "an action to enforce restrictive covenants by injunction is in equity").

## LAW/ANALYSIS

### I. Homeowners' Appeal

#### A. Extrinsic Evidence

The Homeowners argue the circuit court improperly relied upon extrinsic evidence in interpreting the Declarations without finding they were ambiguous. We disagree.

"The main guide in contract interpretation is to ascertain and give legal effect to the intentions of the parties as expressed in the language of the [contract]." *Gilbert v. Miller,* 356 S.C. 25, 30, 586 S.E.2d 861, 864 (Ct.App.2003). "If a contract's language is clear and capable of legal construction, this [c]ourt's function is to interpret its lawful meaning and

the intent of the parties as found in the agreement." *Id.* at 30–31, 586 S.E.2d at 864. "A clear and explicit contract must be construed according to the terms the parties have used, with the terms to be taken and understood in their plain, ordinary, and popular sense." *Id.* at 31, 586 S.E.2d at 864. Under the parol evidence rule, extrinsic evidence is inadmissible to vary or contradict the terms of a contract. *Penton v. J.F. Cleckley & Co.*, 326 S.C. 275, 280, 486 S.E.2d 742, 745 (1997). "However, where a contract is ambiguous, parol evidence is admissible to ascertain the true meaning and intent of the parties." *Id.*

While the Homeowners argue the circuit court erred in relying upon extrinsic evidence, the Developers contend the circuit court determined the Declarations were unambiguous, and relied upon the Declarations' express language and clear meaning in making its findings. The Developers note the circuit court referenced cases in its order where the language of the contracts was clear and unambiguous. Furthermore, the Developers argue the circuit court's review of the evidence was done either to determine the resulting effect upon the rights or duties of the parties after it had interpreted the applicable provisions of the Declarations, or by way of support or confirmation of its interpretation.

We find the circuit court properly interpreted the Declarations in accordance with the rules of construction. A review of the circuit court's order reveals the court relied upon the express language of the Declarations and treated the specific covenants at issue as unambiguous. While the circuit court relied upon evidence presented at trial in its order, the evidence relied upon was used to determine the rights of both parties pursuant to the Declarations. The circuit court did not use extrinsic evidence to ascertain the intention of the parties.

## B. Definition of "Developer"

The Homeowners argue the circuit court erred in finding Jimmy Porter was a Developer of Wright's Point. They contend the term "Developer" should be limited to the definition contained in § 1.12 of the Declarations. We disagree.

The Homeowners contend the circuit court erred in considering Anthony Porter's testimony that the omission of Jimmy's name from § 1.12 was a clerical error, and in considering the Supplemental Declaration which states that Jimmy Porter was a Developer although his name was not set forth in § 1.12. "In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC,* 374 S.C. 483, 497, 649 S.E.2d 494, 501 (Ct.App.2007). "Contracts should be liberally construed so as to give them effect and carry out the intention of the parties." *Id.* "The parties' intention must, in the first instance, be derived from the language of the contract." *Id.* "To discover the intention of a contract, the court must first look to its language—if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Id.* at 498, 649 S.E.2d at 501. "The parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof." *Id.* at 498, 649 S.E.2d at 502.

The circuit court determined the omission of Jimmy Porter's name from § 1.12 was a clerical error. The circuit court noted that while Jimmy Porter's name was not included in the definition of the term "Developer" in § 1.12, an examination of the Declarations in their entirety supported its determination that Jimmy Porter was an official Developer of Wright's Point. The circuit court noted Jimmy Porter's name was included as "Developer" in the language on the first page of the Declarations, on the signature page, and in § 1.01. Furthermore, the circuit court noted the Declarations state that a "[d]eveloper is the owner of certain real property ... described in Exhibit A." Exhibit A of the Declarations contains a description of all four parcels of land, including Parcel D which was owned by Jimmy Porter. The circuit court also noted the deed conveying the common areas in Phase I to the Association lists Anthony Porter and Jimmy Porter as grantors.

We find the Declarations, read in their entirety, support a finding that Jimmy Porter was a Developer of Wright's Point. The first sentence of the Declarations states: "This Declaration made this 24th day of April, 1998, by Anthony R. Porter and Jimmy W. Porter (hereinafter referred to as 'Developer')." Furthermore, the first "[w]hereas" clause on page one

of the Declarations states that the "Developer" is the owner of certain real property ... described in Exhibit A." Exhibit A includes Parcel D owned by Jimmy Porter. Moreover, Anthony Porter and Jimmy Porter signed the Declarations under the "Developer" heading. Accordingly, we find the circuit court did not err in determining that Jimmy Porter was a Developer of Wright's Point.

## C. Undeveloped Land

The Homeowners argue the circuit court erred in finding Wright's Point included the areas identified as "Phase II" and "Future Development" on the recorded plat. The Homeowners contend Wright's Point is limited to the 44 lots, amenities, and common areas shown on the plat, and does not include the additional areas shown as "Phase II" and "Future Development." We disagree.

The circuit court held Wright's Point was not confined to the properties in Phase I. The circuit court found the recorded plat of Wright's Point included a Phase II and an area designated for Future Development. The circuit court noted the marketing materials used to sell properties in Wright's Point clearly stated the development would include multiple phases. Furthermore, the circuit court determined Wright's Point consisted of the four parcels described in "Exhibit A" attached to the Declarations.

The Homeowners argue phases subsequent to Phase I must be developed and submitted by the Developer pursuant to § 2.03 of the Declarations. § 2.03 states:

*Subdivision Plat.* Developer reserves the right to modify, amend, revise and add to the Plat, at any time and from time to time, setting forth such information as Developer may deem necessary with regard to the Subdivision, including, without limitation, the locations and dimensions of the Lots, the private roads, utility systems, drainage systems, utility easements, drainage easements, access easements and building and set-back line restrictions.

Developer reserves unto himself, his heirs and assigns, the right to develop and submit additional phases to this Declaration of Covenants, Conditions, Restrictions and Easements, Wright's Point Homeowner's Association, Inc. and

related documents. Such additional phases shall be limited to the property which Developer has acquired from Lewis H. Wright, et al. and/or Mary P. Logan, or any properties contiguous thereto. Such additional phases will be subject to all of the Covenants, Conditions, Restrictions and Easements and the By–Laws upon Developer, his heirs and assigns, filing a copy of the plat signed by the Developer showing such additional phases or in the alternative filing with the Clerk of Court for Beaufort County, South Carolina his intention to add additional phases to the development.

The Homeowners argue land in "Phase II" and "Future Development" must be developed and submitted as additional phases and are not "already" a part of Wright's Point, as determined by the circuit court. The Homeowners also contend that when the Developer sold the undeveloped land to McNeal, his personal right to develop and submit additional phases was extinguished.

While the Homeowners contend Wright's Point consists only of Phase I, we find an examination of the Declarations in their entirety reveals Wright's Point includes the undeveloped land labeled "Phase II" and "Future Development" on the recorded plat. The Declarations define Wright's Point as the property described in Exhibit A, which includes Phase II and Future Development. The Declarations also refer to a "Community–Wide Standard" and define that term as the standard "generally prevailing throughout the Property." "Property" is defined in § 1.19 as all of the land described in Exhibit A. Furthermore, all of the property in Exhibit A was obtained by the Developers from Lewis H. Wright, et al. and Mary P. Logan as required by § 2.03. To the extent the Homeowners argue the development of additional phases would constitute an impermissible annexation of land into Wright's Point, we note § 2.03 provides for additional phases of development of existing property already subject to the Declarations and not an annexation of property not described in Exhibit A. Furthermore, although the undeveloped property was sold to McNeal, the Declarations provide that all of the property in Exhibit A "shall be held, transferred, sold, mortgaged, conveyed, leased, occupied and used subject to the covenants." Accordingly, we find the circuit court did not err in determin-

ing that Wright's Point is not confined to the properties within Phase I.

### D. McNeal as "Successor Developer"

The Homeowners argue the circuit court erred in approving the assignment of development rights to McNeal Partnership, L.P. We disagree.

§ 1.12 of the Declarations provides for a successor-in-title or successor-in-interest to the Developer of Wright's Point. § 1.12 states:

"Developer" shall mean and refer to (a) Anthony R. Porter, or (ii)[sic] any successor-in-title or any successor in interest to Anthony R. Porter, to all of the Property then subject to this Declaration and provided in the instrument of conveyance to any such successor-in-title or interest is expressively designated as "Developer" hereunder by the grantor of such conveyance, which grantor shall be the "Developer" hereunder at the time of such conveyance.

In June 2007, Anthony Porter and Jimmy Porter assigned their development rights in Wright's Point to McNeal Partnership, L.P. The Homeowners requested the circuit court "reopen the trial" and "include in its ruling . . . a declaration as to the right of McNeal to act as the Developer." In its order, the circuit court held the assignment of Developer rights to McNeal was "done properly" and "was executed in accordance with the applicable language of the covenants." The circuit court noted the conveyance met the requirements of § 1.12 by expressly identifying Anthony Porter and Jimmy Porter "collectively as 'Developer.' "

▉ First, the Homeowners argue the Developers' rights were extinguished and could not be conveyed. They contend Anthony Porter and Jimmy Porter conveyed their interests in the undeveloped land more than five years before the assignment in June 2007. Second, the Homeowners argue (1) it was a legal impossibility for McNeal to succeed to all of the property subject to the Declarations, (2) none of the deeds which conveyed Parcels B and D contained any designation that the grantee was deemed the successor developer, and (3) McNeal did not take title to all of the property from the Developer. Third, the Homeowners argue the circuit court

erred when it determined McNeal was a successor developer when the Assignment of Developer's Rights stated McNeal was not liable for the Developers' actions which occurred prior to the assignment.

The Developers note that according to § 1.12, a successor developer becomes Developer "to all of the Property then subject to this Declaration." The Homeowners argue Parcel C was subdivided and the lots sold thus making it impossible for McNeal to succeed as Developer of "all the property." The Developers contend § 1.12 does not state that lots are no longer subject to the Declarations once they have been conveyed to subsequent owners. The Developers also contend § 1.12 provides that a successor developer may either be a successor-in-title or a successor-in-interest. They note that while a successor-in-title would derive authority through a deed, a successor-in-interest may derive authority through another instrument of conveyance. Here, McNeal did not become a successor developer through a deed, but rather through the Assignment of Developer's Rights. The Developers also note McNeal was specifically identified as the successor developer by the grantor.

We find a preponderance of the evidence demonstrates that McNeal is a successor developer. The Assignment of Developer's Rights was properly executed and specifically identified McNeal as the successor developer. As a successor-in-interest and not a successor-in-title, there was no requirement that the deeds to Parcels B and D designate McNeal as a successor developer. Furthermore, § 12.04 provides that the provisions of the Declarations "shall run with and bind title to the Property" and are binding upon "all Owners ... and their respective heirs ... successors and assigns." Thus, the Declarations do not indicate that lots are no longer subject to the Declarations once they have been conveyed to subsequent owners. Additionally, the Homeowners have failed to prove that a successor developer cannot assume the rights of Developer and also disclaim liability for actions of the Developer prior to the assignment of rights. Accordingly, we affirm the circuit court's finding that McNeal is a successor developer of Wright's Point.

### E. Control of the Association

The Homeowners argue the circuit court erred in finding the Developer was entitled to continue to appoint and remove officers and directors of the Association. We disagree.

§ 7.01 of the Declarations states, in part:

Developer shall have the right to appoint and remove all members of the Board and any officer or officers of the Association until such time as the first of the following events shall occur: (i) the date as of which the last Lot in the Subdivision shall have been conveyed to a Person other than Developer or Builder, or (ii) the surrender by Developer of the authority to appoint and remove directors and officers of the Association by an express amendment to this Declaration executed and recorded by Developer.

The circuit court determined the language of §§ 7.01 and 12.01 was "clear and unambiguous" and that neither of the conditions set forth in § 7.01 and reiterated in § 12.01 had occurred. The circuit court found neither Anthony Porter nor Jimmy Porter had surrendered their authority to control the Association. In addition, the circuit court found Anthony Porter's transfer of title to his lots in Wright's Point to himself as Trustee of a Personal Residence Trust did not divest him of his property for purposes of control under § 7.01. The circuit court noted Anthony Porter testified the transfer of title in his lots was for tax purposes only, and that he continued to pay his Association dues. Furthermore, the circuit court determined the last lot in Wright's Point had not been conveyed to a person other than "Builder." The circuit court noted the Declarations define "Builder" as "any Person or legal entity engaged principally in the business of construction of structures to whom the Developer sells or has sold one or more Lots." The circuit court also noted that Ratcliff and Lloyd Denny, both licensed general contractors, testified as to their ownership of lots in Phase I.

First, the Homeowners argue Anthony Porter's conveyance of his lots in Phase I to his Personal Residence Trust constituted a conveyance "to a Person other than Developer" under § 7.01. They argue Porter's Trust is a different legal entity from "Developer." According to § 1.17 of the Declarations, " 'Person shall mean and refer to a natural

person, corporation, partnership, association, trust or other legal entity or any combination thereof." Second, the Homeowners contend none of the owners of lots in Phase I meet the definition of a "Builder" under the Declarations. They argue Ratcliff and Denny are not "Builders" simply because they hold contractor's licenses in their own names, as required by law. Third, the Homeowners argue Porter was no longer entitled to control the Association because he no longer had a financial interest in Wright's Point.

Based upon our finding that McNeal is a successor developer of Wright's Point, we affirm the circuit court's finding that the Developer was entitled to continue to appoint and remove officers and directors of the Association. Pursuant to § 7.01, the Developer has the right to control the Association "until the date as of which the last Lot in the Subdivision shall have been conveyed to a Person other than Developer or Builder," or he surrenders the authority by express amendment to the Declarations. Here, McNeal has not sold his lots in Phase I or the undeveloped property in Wright's Point, and he has not surrendered his right to control the Association. Accordingly, we affirm the circuit court's finding that the Developer was entitled to continue to appoint and remove officers and directors of the Association.

### F. Control of the Committee

The Homeowners argue the circuit court erred in finding the Developer had the right to continue to control the Committee after Phase I was developed. We disagree.

§ 1.01 of the Declarations states, in part:

"Wright's Point Architectural Committee" shall mean and refer to Anthony R. Porter and Jimmy W. Porter or such other individual(s) as Developer may appoint, or such entity to which the Wright's Point Architectural Committee may assign its duties, until all improvements constructed thereon and sold to permanent residents. At such time as all of the Lots in the Subdivision have been fully developed, the Developer shall notify the Board and all Owners of Lots in the Subdivision to that effect, at which time the Developer's rights and obligations as the Wright's Point Architectural Committee shall forthwith terminate. Notice to the Board

and all the owners by Developer under this provision shall be in writing.

The circuit court found that because there were not improvements on all of the lots in Phase I, and because not all of the lots were owned by permanent residents, the Developer was entitled to remain in control of the Committee. The circuit court also found the Developer had not given notice to the Board and Owners as required by § 1.01.

The Homeowners argue it is impossible to determine whether all of the lots were owned by permanent residents, or whether all improvements had been constructed. They contend the Developer was no longer entitled to control the Committee because he sold all of the lots and had no financial interest in the development of the undeveloped land. The Developers maintain the evidence produced at trial demonstrates that not all of the lots were owned by permanent residents, and that not all of the lots had improvements.

We find a preponderance of the evidence demonstrates there were lots in Phase I not owned by permanent residents, and vacant lots in Phase I with no improvements. Homeowner Caldwell testified there were vacant lots in Phase I and lots that had not been sold to permanent residents. Richard Ratcliff and Homeowner Hucks both testified they owned lots in Phase I that had not been improved. Moreover, § 1.10 provides that the Developer retains control over the Committee until all of the lots are fully developed and the Developer notifies the Board and all Owners to that effect. Anthony Porter testified lots in Wright's Point would not be fully developed until all improvements within the entire development were complete to his satisfaction. He also testified that "fully developed" does not mean "the completion and sale of all lots." Furthermore, there was no evidence produced at trial showing Anthony Porter ever notified the Board or the Owners that all of the lots had been fully developed as required by § 1.01. Accordingly, we affirm the circuit court's finding that the Developer had not relinquished the right to control the Committee.

## G. Derivative Claims and Attorney's Fees

The Homeowners contend the circuit court erred in failing to find their claims were derivative and that they were entitled to attorney's fees. We disagree.

 A party cannot recover attorney's fees unless authorized by contract or statute. *Jackson v. Speed,* 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997); *see also Hegler v. Gulf Ins. Co.,* 270 S.C. 548, 549, 243 S.E.2d 443, 444 (1978) ("As a general rule, attorney's fees are not recoverable unless authorized by contract or statute."). The Homeowners argue they are entitled to attorney's fees pursuant to section 33–7–400 of the South Carolina Code (2006), which provides that "[d]erivative suits may be maintained on behalf of South Carolina corporations in federal and state court in accordance with the applicable rules of civil procedure." The Homeowners contend that while the statute does not specifically authorize attorney's fees, the statute's Official Comment provides for recovery. The Official Comment to section 33–7–400 of the South Carolina Code states in part: "[t]he right of successful plaintiffs in derivative suits to this recovery is so universally recognized, both by statute and on the theory of a recovery of a fund or benefit for the corporation, that specific reference was thought to be unnecessary." Assuming without deciding that this suit is a derivative action, the Homeowners are not entitled to attorney's fees under section 33–7–400. This section does not specifically authorize the recovery of attorney's fees, and the Official Comment is specifically limited to "successful plaintiffs." Accordingly, we affirm the circuit court's denial of the Homeowner's request for attorney's fees.

## II. Developers' Appeal

 The Developers argue the circuit court erred in denying their request for attorney's fees. This issue is not preserved for our review.

The Developers contend the language of § 11.01 of the Declarations provides a contractual basis that mandates an award of attorney's fees to the Developers and the Association. § 11.01 states, in part:

Each Owner shall comply strictly ... with the covenants, conditions and restrictions set forth in this Declaration .... Failure to comply with any of the same shall be grounds for ... instituting an action ... for damages and/or for injunctive relief, such actions to be maintainable by Developer, the Board on behalf of the Association, or in a proper case, by an aggrieved Owner. Should Developer or the Association

employ legal counsel to enforce any of the foregoing, all costs incurred in such enforcement, including court costs and reasonable attorneys' fees, shall be paid by the violating Owner.

The Developers argue the Homeowners' attempts to gain control of the Association, dictate and limit the use of common amenities, and prevent future phases of development, as well as their movement of Association funds to an unauthorized account, constitute non-compliance with the Declarations. The Developers also argue they are entitled to attorney's fees pursuant to the Uniform Declaratory Judgments Act. Section 15–53–100 of the South Carolina Code (2005) provides that "[i]n any proceeding under this chapter the court may make such award of costs as may seem equitable and just."

In order for an issue to be preserved for appellate review it must have been raised to and ruled upon by the trial court. *Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000). A party must "present his issues and arguments to the lower court and obtain a ruling before an appellate court will review those issues and arguments." *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000). Here, the Developers failed to present their arguments on appeal to the circuit court. In their Answer and Counterclaim, the Developers asserted they were entitled to recover attorney's fees due to the frivolous nature of the Homeowners' claims. However, the Developers did not assert they were entitled to attorney's fees pursuant to § 11.01 of the Declarations or section 15–53–100 of the South Carolina Code. Therefore, because the circuit court did not rule on these arguments and the Developers failed to file a Rule 59(e) motion requesting a ruling from the circuit court, these arguments are not preserved for our review.

## CONCLUSION

For the foregoing reasons, the order of the circuit court is **AFFIRMED.**

SHORT and WILLIAMS, JJ., concur.